UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARGARET SEXTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:16CV197 HEA |
| | ) |
| NANCY A. BERRYHILL[1], | ) |
| Acting Commissioner of | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's request for judicial review under 42 U.S.C. § 405(g) of the final decision of Defendant denying Plaintiff's application for disability insurance benefits income under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401, *et seq*. For the reasons set forth below, the Court will affirm the Commissioner's denial of Plaintiff's application.

### **Facts and Background**

On September 30, 2014, Administrative Law Judge Carol L. Boorady conducted a video hearing. Plaintiff and the Vocational Expert both appeared. Plaintiff appeared in Hannibal, Missouri. The Administrative Law Judge presided

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

over the hearing from Columbia, Missouri. Plaintiff was born on August 1, 1964. She was 50years old at the time of the hearing. Plaintiff completed high school and has an Associate's Degree as a medical secretary.

Plaintiff testified that she experiences problems from her diabetes. Her blood sugar levels are extremely uncontrollable. She becomes very agitated and extremely hot, but the levels do not get to the very high levels very often, maybe once or twice per week. When her blood sugar levels are low, her hands start to shake, and she has had two seizures in the last month. She testified that she was going to see an endocrinologist in October and that she would be getting an insulin pump which she hoped would regulate her blood sugar levels a bit better.

Plaintiff testified, on examination by the ALJ, that she suffered from neuropathy, which starts in her feet and goes up to her hips. Plaintiff has bone spurs and arthritis in her feet, and she has pain in her lower back. Plaintiff testified that she has had two back surgeries, and another is necessary. She sits for 10-15 minutes to alleviate pain, but sitting also aggravates her pain. She takes Norco or Vicodin for pain.

Plaintiff testified that when she gets up in the morning she makes breakfast for herself. She packs her husband's lunchbox, puts her 15 year old daughter on the bus and tries to clean up a bit. Afterwards, she sometimes sits at her computer to work for a little bit, but she has to get up and down. She tries to do some

cleaning; laundry is probably the easiest thing for her to do because it doesn't weigh much. She testified that she goes grocery shopping and walks as she leans on the shopping cart. She attends her daughter's softball games and has trouble if she has to sit in the bleachers. Plaintiff was formerly employed as a medical records clerk and a cashier, but she testified that she could no longer do those jobs because of all the standing they required.

The ALJ also secured testimony of Denise Anne Weaver, a Vocational Expert. Ms. Weaver testified and classified the past work experience of the Plaintiff in relation to the Dictionary of Occupational Titles. Based upon all of those considerations and the stated hypotheticals of the ALJ, including stated limitations, the Vocational Expert concluded Plaintiff could perform her previous job as a medical records clerk and that there were jobs available for Plaintiff as a document preparer, microfilming, dowel inspector, and a lens inserter.

The ALJ determined that Plaintiff was not entitled to a finding of disabled. The Appeals Council denied Plaintiff's request for review on December 15, 2015. The decision of the ALJ is now the final decision for review by this court.

**Statement of Issues**

The issues in a Social Security case are whether the final decision of the Commissioner is consistent with the Social Security Act, regulations, and applicable case law, and whether the findings of fact by the ALJ are supported by

substantial evidence on the record as a whole. Here the Plaintiff asserts the specific issue in this case is whether the ALJ properly considered opinion evidence.

## Standard for Determining Disability

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir.2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

A five-step regulatory framework is used to determine whether an individual claimant qualifies for disability benefits. 20 C.F.R. §§ 404.1520(a), 416.920(a); see also *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir.2011) (discussing the five-step process). At Step One, the ALJ determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R.

§§ 404.1520(a)(4)(I), 416.920(a)(4)(I); *McCoy*, 648 F.3d at 611. At Step Two, the ALJ determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the ALJ proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the ALJ must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir.2009) (citing 20 C.F.R. § 404.1545 (a)(1)); see also 20 C.F.R. §§ 404.1520(e), 416.920(e). At Step Four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a) (4) (iv), 404.1520(f), 416.920(a) (4) (iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant

work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id...* At Step Five, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.; Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir.2012).

**RFC**

A claimant's Residual Functional Capacity (RFC) is the most an individual can do despite the combined effects of all of his or her credible limitations. *See* 20 C.F.R. § 404.1545. An ALJ's RFC finding is based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir.2010); *see also* 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96–8p. An ALJ may discredit a claimant's subjective allegations of disabling symptoms to the extent they are inconsistent

with the overall record as a whole, including: the objective medical evidence and medical opinion evidence; the claimant's daily activities; the duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medications and medical treatment; and the claimant's self-imposed restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984); 20 C.F.R. § 404.1529; SSR 96–7p.

A claimant's subjective complaints may not be disregarded solely because the objective medical evidence does not fully support them. The absence of objective medical evidence is just one factor to be considered in evaluating the claimant's credibility and complaints. The ALJ must fully consider all of the evidence presented relating to subjective complaints, including the claimant's prior work record and observations by third parties and treating and examining physicians relating to such matters as:

(1) The claimant's daily activities;

(2) The subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) Any precipitating or aggravating factors;

(4) The dosage, effectiveness, and side effects of any medication; and

(5) The claimant's functional restrictions.

Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question.

*Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir.2001) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir.2001)). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. See *Lauer*, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC); *Casey v. Astrue*, 503 F .3d 687, 697 (the RFC is ultimately a medical question that must find at least some support in the medical evidence in the record). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir.2006).

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the claimant's complaints. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir.2005). "It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence." *Id*. The ALJ, however, "need not explicitly discuss each *Polaski* factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir.2004). The ALJ need only acknowledge and consider those factors. *Id*. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir.1988). The burden of persuasion to prove disability and demonstrate RFC remains on the claimant. *See Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008).

## ALJ Decision

The ALJ here utilized the five-step analysis as required in these cases. The ALJ determined at Step One that Plaintiff had not engaged in substantial gainful employment from the onset date of May 1, 2011. The ALJ found at Step Two that Plaintiff had the severe impairments of degenerative disc disease with a herniated disc and stenosis at C5-C6 and C6-C7 with a history of fusion surgery, degenerative disc disease of the lumbar spine, and diabetes with diabetic neuropathy. (20 CFR 404.1520©).

At Step Three, the ALJ found that Plaintiff did not suffer from an impairment or combination of impairments that meets or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (404.1520(d), 404.1525, 404.1526).

As required, prior to Step Four, the ALJ determined that Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) in that she can lift and carry 20 pounds occasionally and 10 pounds frequently. Petitioner can stand and walk for 6 hours of an 8-hour day and sit for 6 hours of an 8-hour day. She can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can rarely crouch. Plaintiff can do no more than occasional twisting, stooping and crawling. She can do no more than occasional overhead reaching with both upper extremities. Claimant must avoid

concentrated exposure to vibration and work hazards, such as working around unprotected heights or dangerous moving machinery. She requires a sit/stand option allowing a change in position every thirty to forty five minutes for a few minutes.

At Step Four it was the finding of the ALJ that Plaintiff was capable of performing her past relevant work as a cafeteria attendant.

Step Five the ALJ concluded that Plaintiff was not under a disability.

**Judicial Review Standard**

The Court's role in reviewing the Commissioner's decision is to determine whether the decision "'complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.'" *Pate–Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir.2009) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir.2008)). "Substantial evidence is 'less than preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir.2012) (quoting *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir.2009)). In determining whether substantial evidence supports the Commissioner's decision, the Court considers evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those

determinations are supported by good reasons and substantial evidence.'" *Id*. (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir.2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir.2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir.2005)).

Courts should disturb the administrative decision only if it falls outside the available "zone of choice" of conclusions that a reasonable fact finder could have reached. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir.2006). The Eighth Circuit has repeatedly held that a court should "defer heavily to the findings and conclusions" of the Social Security Administration. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

**Discussion**

Plaintiff asserts the ALJ did not properly adopt the restrictions identified by Plaintiff's treating doctors in the medical evaluations they completed. A review of the record, and the finding of the ALJ relating to the record, finds this assertion unsupported because the ALJ concluded that these evaluations were not supported by the objective medical evidence and Plaintiff's daily activities.

The objective medical evidence, or lack thereof, is an important factor to consider in evaluating subjective complaints. Objective medical evidence is a useful indicator in making reasonable conclusions about the intensity and persistence of a claimant's symptoms and the effect those symptoms may have on a claimant's ability to work. *See* 20 C.F.R. § 404.1529(c)(2). Lack of objective medical evidence is a factor an ALJ may consider. *Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004)(citations omitted). The ALJ noted that an x-ray of Plaintiff's lumbar spine in December 2012, showed degenerative joint disease of the lumbar spine with preserved disc space, but the record contained no MRI scans of Plaintiff's lumbar spine or any other objective diagnostic evidence that would support the severity of pain asserted by Plaintiff.

**Was There Substantial Evidence to Support the ALJ Evaluation of Medical Opinion Evidence?**

In order to formulate the RFC the ALJ considered and discussed the opinions of Plaintiff's primary care provider,

According to CFR §404.1527(c)(2)-(5), if controlling weight is not given to a treating physician's opinion, the ALJ considers the following factors: the length of the treatment relationship and frequency of examinations; the nature and extent of the treatment relationship; the supportability by medial signs and laboratory findings; the consistency of the opinion with the record as a whole; and the doctor's specialization. In this regard the ALJ found that the doctors' opinions

were not supported by the record as a whole. *See Goff v. Barnhart*, 421 F.3d 785, 790–91 (8th Cir. 2005) ("[A]n appropriate finding of inconsistency with other evidence alone is sufficient to discount the opinion."). Dr. Graven's opinion was based on Plaintiff's neck impairment, however, his treatment notes after Plaintiff's fusion do not indicate the symptoms tenderness, muscle spasms, sensory loss, abnormal posture, and reduced grip strength that he included in his opinion.

Plaintiff herself reported improvement following her fusion. She reported on February 2, 2012 that she was doing well with no arm pain. The following month, she reported only occasional twinges in her arms and hands, and denied having much neck pain. She reported only occasional neck pain and right arm pain in August, 2012.

Dr. Stowell also based her report on Plaintiff's neck problem. There are no documentation notes after the fusion which demonstrate abnormal clinical findings. Dr. Stowell consistently noted that Plaintiff was alert at her appointments, which undermines Dr. Stowell's conclusion that Plaintiff's neck pain would constantly interfere with her ability to concentrate. Dr. Stowell's examination of Plaintiff five days before her opinion of September 2014 was unremarkable.

The ALJ also found that the doctor's opinions were not consistent with Plaintiff's documented activities of daily living (Tr. 23). The ALJ may discount

opinions of physical limitations greater than Plaintiff actually exhibited in her daily life. *See Turpin v. Colvin*, 750 F.3d 989, 994 (8th Cir. 2014) (ALJ properly discounted opinion where it conflicted with the medical records, the testimony of a medical expert, and Plaintiff's account of her daily activities).

The ALJ, without question, considered all the evidence in articulating sound reasons for discounting the medical source opinions and subjective complaints that were not consistent with the record as a whole. Each of the ALJ's findings and conclusions contain a specific basis for same. The ALJ carefully considered all of the evidence, including Plaintiff's testimony of what activities she was capable of performing on a daily basis.

After careful review, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole. The decision will be affirmed. *Perkins v. Astrue,* 648 F.3d 892, 900 (8th Cir.2011); *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001).

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner of Social Security is **Affirmed**.

A separate judgment in accordance with this Opinion, Memorandum and

Order is entered this same date.

Dated this 23rd day of March, 2017.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE